## LEBBEUS CHAPIN *versus* RICHARD LAPHAM.

Where the defendant verbally requested the plaintiff to assist the defendant's son in his business, promising to indemnify him against any loss he might incur in so doing, and the plaintiff accordingly signed a note as surety, with the son as principal, which he afterwards paid, and called upon the defendant for indemnity, it was *held*, that the defendant's promise was not within the statute of frauds.

Notice to the defendant, that the plaintiff had incurred the debt on the defendant's re sponsibility, was *held* to be sufficient, without a subsequent notice that he had paid the note.

It was *held*, that the defendant had no ground to complain of the instruction to the jury, that the promise of indemnity extended only to such liabilities as were in curred by the plaintiff in the ordinary course of the business in which the son was engaged at the time when the promise was made, and that the son's ceasing to board with the plaintiff and removing to a place a few miles distant, were not acts which of themselves discharged the defendant from his promise, but that it was for the jury to determine, upon all the evidence, whether the note had been given by the son in the ordinary course of the business in which he was engaged at the time of the promise.

A witness being sworn to tell the whole truth, he ought to do what is reasonable to enable him to perform that duty faithfully and sincerely, according to the spirit of his oath ; and he may lawfully be required to look at memoranda or papers within his power, to aid his recollection.

Thus, where the counsel on one side, being called by the adverse party to testify what

took place at a former trial, which he did not recollect particularly, was required to look at his minutes then lying before him, to aid his recollection, it was *held* that such requisition was a question addressed to the discretion of the judge at the trial.

ASSUMPSIT to recover the amount paid by the plaintiff on a note signed by himself and Lilburn Lapham, dated February 3, 1834.   Trial before *Morton* J.

It appeared, that when the note was given the defendant re·sided in Rhode Island, and that Lilburn was his minor son, residing and doing business in Palmer, in Massachusetts.   The plaintiff paid the note on February 22, 1835.   He was a surety merely, having received no part of the consideration.

The plaintiff relied on the ground, that prior to the giving of the note, the defendant requested him to assist Lilburn in his business, whenever he should need assistance, and promised to indemnify him for any liabilities he might incur and any assistance he might render.

The defendant contended ; 1. That this promise, being by parol, was within the statute of frauds.

2. That he could not be held on this promise without notice that the plaintiff had incurred the debt on the defendant's re·sponsibility.

3. That notice to the defendant, of the payment of the debt by the plaintiff, was indispensable, to enable the plaintiff to commence this action.

4. That the defendant could not be held for any liabilities incurred by the plaintiff, except those incurred for Lilburn in the course of the business in which he was engaged at the time of the promise, and that his leaving the plaintiff's family where he had before boarded, and his removal to the village of Three Rivers, a distance of three miles, was such a change of circumstances as discharged the defendant from his promise.

The jury were instructed, that the promise was not within he statute of frauds ; that it was incumbent on the plaintiff to prove that he gave reasonable notice to the defendant that he had become responsible upon the note in suit, but that he might maintain this action without any previous notice of the payment of the note ; that the defendant's promise of indem·nity extended only to such liabilities as were incurred by the

Chapin
*v.*
Lapham.

plaintiff, in the ordinary course of the business in which Lilburn was engaged at the time when it was made ; that Lilburn's ceasing to board with the plaintiff, and his removal to Three Rivers, were not acts which of themselves discharged the defendant from his liability on his promise of indemnity, but it was for the jury to determine, upon all the evidence in the case, whether the note was given by Lilburn in the ordinary course of the business in which he was engaged when the defendant made the promise of indemnity.

In the course of the trial the plaintiff's counsel called the defendant's counsel as a witness, to prove what took place on a previous trial. The latter not recollecting, the former requested him to look at his minutes, which were lying upon the table, to refresh his recollection. This he declined doing, unless directed by the court. He was so directed.

To the above instructions the defendant excepted. If any one of them was wrong, a new trial was to be granted ; otherwise judgment was to be rendered on the verdict, which was for the plaintiff.

*Sept. 26th*

*R. A. Chapman* and *Ashmun* insisted, that the defendant's promise to indemnify the plaintiff, implied that his son Lilburn was to be liable in the first instance, and the defendant was to pay in case of his neglect ; that credit was given to the son, notwithstanding he was under age ; that the promise therefore was collateral, and within the statute of frauds. *Buckmyr v. Darnall*, 2 Ld. Raym. 1085 ; *Thompson v. Bond*, 1 Campb. 4 ; *Rogers v. Kneeland*, 13 Wendell, 121. In support of the third exception, respecting notice, they referred to *Babcock v. Bryant*, 12 Pick. 133 ; *Norton v. Eastman*, 4 Greenl. 521. In regard to the fourth exception, they said the practice of calling upon counsel to testify what has taken place at a former trial, ought to be discountenanced by the Court, inasmuch as it places them in an embarrassing situation, by making their testimony a subject for comment. The principle which protects the papers of a client, seems applicable to minutes made by counsel in his service. *Curry v. Walter*, 1 Esp. R. 456. Counsel have a right to inspect papers used by a witness to aid his recollection, and if counsel may be examined as to a portion of the evidence at a former trial, the adverse counsel may

look at the whole of his minutes.  3 Stark. Ev. 1737, 1739
A mere private memorandum made by counsel to aid his recol
lection, ought not thus to be dragged into public notice.  A
witness is not to be sent from the stand to examine a book, in
order to qualify himself to testify ; if he may be required to
study a page, he may a volume.  The circumstance that the
minutes of the counsel happened to be lying on the table in
court, can make no difference.

*Wells*, *Alvord* and *Davis*, for the plaintiff.  The defendant's
promise was an original undertaking.  *Harrison* v. *Sawtel*, 10
Johns. R. 242 ; *Chapin* v. *Merrill*, 4 Wendell, 657 ; *D' Wolf*
v. *Rabaud*, 1 Peters's Supr. Ct. R. 499 ; *Tomlinson* v. *Gill*,
Ambl. 330 ; *Read* v. *Nash*, 1 Wils. 305.  If it was collateral
in form, still it must be regarded as an original promise, the de-
fendant's son being an infant.  *Harris* v. *Huntback*, 1 Burr.
371 ; Chitty on Contr. 204 ; 2 Stark. Ev. 594 ; 2 Saund. Pl.
& Ev. 547 ; 1 Swift's Dig. 253 ; *Swasey* v. *Vanderheyden*,
10 Johns. R. 33 ; *Hussey* v. *Jewett*, 9 Mass. R. 101.  To
the point of notice, they cited *Russell* v. *Clark*, 7 Cranch, 69 ;
*Douglass* v. *Reynolds*, 7 Peters, 113 ; *Hall* v. *Rand*, 8 Con-
nect. R. 563 ; *Oxford Bank* v. *Haynes*, 8 Pick. 423 ; *Babcock*
v. *Bryant*, 12 Pick. 133 ; *Thomas* v. *Davis*, 14 Pick. 353.

*Sept. 29th*      SHAW C. J. delivered the opinion of the Court.  The
foundation of the action is this ; the defendant's minor son,
having undertaken to transact business on his own account, at a
distance from his father, the defendant requested the plaintiff to
assist the son in his business, and promised to indemnify him
against any loss he might incur, in so doing.  One ground of
defence was, that this was an undertaking to be answerable for
the debt or default of another, and as such no action could
be maintained upon it without a promise in writing conformably
to the statute of frauds.  But the judge instructed the jury,
that the case was not within the statute of frauds ; and the
Court are of opinion that this direction was right.

The cases on this branch of the statute of frauds, are so nu-
merous, that it would be a difficult task to review them ; and the
distinctions as to cases which are or are not within the statute,
are so nice, and often so shadowy, that it would be still more dif-
ficult to reconcile them.  One distinction however is well settled ,

that when the party making the promise, is alone liable, or when in other words the whole credit is given to him, it is an original and not a collateral promise, it is not an undertaking for the debt of another, and therefore is not within the statute of frauds. *Skelton* v. *Brewster*, 8 Johns. R. 293 ; *Farley* v. *Cleveland*, 4 Cowen, 432 ; *Goodman* v. *Chase*, 1 Barn. & Ald. 297. In the present case we think the whole credit was given by the plaintiff to the defendant. The son of the defendant was a minor, and not liable to any action by the plaintiff, for the money paid on his account, on the joint and several note signed by the plaintiff, in pursuance of the defendant's request. The undertaking and promise of the defendant therefore was not collateral to any promise of the son ; but was separate, independent, and original.

It is far from being clear that the defendant would not have been liable, had the plaintiff undertaken an onerous obligation at his request, for the benefit of a third person, even though that third person may have been himself liable incidentally and upon a promise implied by law.

As where the plaintiff, at the request of the defendant, became bail for a third person, a parol promise to indemnify, was held good. *Harrison* v. *Sawtel*, 10 Johns. R. 242. So a promise by one to indemnify another for becoming guarantee for a third, is not within the statute of frauds, and is good without being in writing. *Chapin* v. *Merrill*, 4 Wendell, 657. But it is not necessary to decide this question.

Here is ample consideration shown ; the plaintiff having taken upon himself an onerous obligation at the defendant's request.

Another objection taken to the directions of the judge was this ; the defendant contended, that it was incumbent on the plaintiff to prove, not only that he had undertaken a responsibility for the son, agreeably to his request, but a separate notice of his having paid the money. But the Court are of opinion that this was not necessary, and that the direction in this respect was right.

Another ground of argument for a new trial is, that as the defendant had undertaken to indemnify the plaintiff, for any assistance he might afford his son, in his business, this must apply

to the business in which he was then engaged ; that he in fact left boarding in the plaintiff's family, and removed to a distance of three miles, and that this was such a change of business, that the defendant was no longer responsible. We think this point was left to the jury, with instructions sufficiently favorable for the defendant. Supposing the defendant right, in point of law : whether the son had changed his line of business, was a question of fact for the jury, and all the circumstances insisted on by the defendant were left to the jury to decide, whether they proved such change of business or not. The jury by their verdict found that the son had not changed the course of his business, and there is nothing to show, that this inference from the evidence, was not well warranted.

Another point of some interest and importance in practice was this ; one of the counsel in the cause was called as a witness by the adverse party to testify to some fact. Not recollecting it particularly, he was requested to look at his minutes, then lying on the table, to aid his recollection in the matter inquired of, which he declined doing unless required by the court. He was so required, and to this objection is now taken.

We lay out of the case the fact, that the witness in the particular case, was counsel in the cause. Such a witness is not only fully protected, but he is inhibited by law from disclosing any facts communicated to him, or of which he has acquired a knowledge, in consequence of his being professionally engaged in the cause. Whether it were better policy that the law were so framed as to render counsel incompetent as witnesses for the adverse party, is a legislative and not a judicial question. As the law stands they are competent, under the limitation before stated. The argument therefore from the policy of the law in regard to the peculiar condition of counsel, can be of no avail.

The question then is, whether a witness who has the means of aiding his memory by a recurrence to *memoranda* or papers in his power, can lawfully be required to look at such papers, to enable him to ascertain a fact with more precision, to verify a date, or to give more exact testimony than he otherwise could, as to times, sums, numbers, quantities and the like.

There may be cases undoubtedly, in which it would be a

Chapin
v.
Lapham,

great hardship upon a witness to require him to qualify himself, so to speak, to testify, by reference to papers and documents in his power ; as when it would subject him to much trouble or expense, or involve any breach of confidence, of duty or of honorary obligation, or unreasonably disclose a knowledge of his own affairs.

But there are other cases, in which it would lead to an entire perversion and frustration of the purposes of justice, if a witness could not be required to refresh his memory, and prepare himself to testify, by an examination of papers in his own custody or power, or when they are produced at the trial. As where a mate of a vessel, who had kept his cargo book, or an inspector of elections his tally list, or a clerk in a warehouse his memorandum of the receipt and delivery of goods, they may testify with great accuracy by the aid of their memoranda, but very imperfectly, or not at all, without. And multitudes of similar cases might be suggested. Suppose these witnesses, from malice or caprice, or still worse, from a desire to favor the adverse party, should refuse to examine their memoranda ; the rights of life, liberty, property or reputation, public and political, as well as private, civil and social rights, might be affected and put in jeopardy. It would be hardly going beyond the principle contended for, to say that an attesting witness, called to prove a will or deed, if he chose to close his eyes and refuse to look at the instrument, might not be required to look at it, and thus qualify himself to say whether he attested it or not.

But the view of the Court is, that, however this question was decided, it is no ground for a new trial. It is a question of sound judicial discretion, for the judge at the trial, to direct how the examination shall be conducted ; and he will be governed in this respect, by a view to the rights of the parties and the furtherance of justice, having due regard to the rights of the witness, under all the circumstances of the case. The witness is bound under his oath to testify the whole truth, and he ought to do what is reasonable to enable him to perform that duty, faithfully and sincerely, according to the spirit of his oath.

*Judgment on the verdict*